## Brennan, Trustee, v. Keller et al.

*Joseph A. Allen*, for plaintiff.

*Edward E. Dicker*, for defendants.

KUN, J., March 27, 1943.—In October 1928 defendant gave his bond and warrant of attorney to plaintiff in the sum of $3,000 accompanied by a mortgage upon certain premises in the City of Philadelphia owned by defendant. Thereafter, in January of 1929, defendant conveyed the premises to others under and subject to the said mortgage. In August 1932 judgment was entered on defendant's bond, damages assessed in the sum of $3,360, and the mortgaged premises were foreclosed and bought in by plaintiff in November of 1933 for $50. Thereafter, in 1934, by financing arranged

through the Home Owners' Loan Corporation, plaintiff conveyed the premises back to the last owners for a total consideration of $3,131.36, thus getting back his original mortgage investment in full and some back interest. On this basis defendant sought ineffectually to have the judgment against him satisfied. In April 1940 damages were reassessed in the sum of $1,594.51. In the interim, on May 21, 1937, plaintiff had issued an attachment execution against defendant, summoning as garnishees certain trustees of an estate in which defendant had an interest. Judgment against the garnishees was entered on October 2, 1940, in the sum of $1,594.51, the amount admitted to be due by the garnishees to defendant. On September 3, 1942, defendant obtained a rule on plaintiff to show cause why the judgment liability of defendant to plaintiff should not be released and discharged and the judgment satisfied of record and the attachment execution and judgment thereon vacated and set aside, because plaintiff had failed to comply with the Deficiency Judgments Act of July 16, 1941, P. L. 400, by having determined the fair value of the real estate bought in by him at the foreclosure proceedings. Plaintiff filed an answer admitting that he had not complied with the act (no doubt because the property had been appraised at $3,910 by the Home Owners' Loan Corporation, an excess of over $900 over plaintiff's original mortgage). He admitted "that defendant is discharged and released from all liability to plaintiff under the original judgment entered against him on August 11, 1932", but maintained that he nevertheless has a good judgment against the garnishees, and is entitled to have execution thereof.

The question is whether a judgment against a garnishee is enforcible when the primary judgment upon which the attachment proceedings were instituted has been discharged and is no longer enforcible. We do not think the question presents any difficulty. Plaintiff

concedes that defendant is entitled to have the judgment against him satisfied. How can he then proceed with his execution thereon?

An attachment sur judgment is not an original proceeding. It is nothing more than a form of execution and obviously there cannot be an execution on a judgment that no longer exists. Plaintiff claims that the judgment against the garnishee gave him a property right and is res adjudicata. It is indeed res adjudicata. But of what? Only that there was found in the possession of the garnishee property of defendant of the amount stated in the judgment against the garnishee. But all this is collateral to and for the purpose of execution on the primary judgment against defendant. What if, after the entry of the judgment against the garnishee, defendant had gone to plaintiff and actually paid the amount of the judgment against him in cash? That would have discharged and released defendant of all liability under the judgment against him. Could the judgment creditor then realize on his judgment against the garnishee? To put the question is to answer it. The effect of the Deficiency Judgments Act of 1941 is exactly the same. Sections 1 and 7 of the act provide that, when any real property has been sold to the plaintiff in execution proceedings for a price less than the amount sufficient to satisfy the judgment, plaintiff shall petition the court to fix the fair market value of the property within six months after the effective date of it as to sales of property prior thereto, and:

"In the event that no petition is filed within such period, the debtor, obligor, guarantor and any other person liable, directly or indirectly, to the plaintiff or plaintiffs for the payment of the debt shall be released and discharged of such liability to the plaintiff or plaintiffs."

The contention that the act interferes with the vested property right of a judgment creditor was effectively

answered by the Supreme Court in the case of Fidelity-Philadelphia Trust Co., Surviving Trustee, v. Allen et al., etc., 343 Pa. 428, which upheld its constitutionality, in which it was pointed out that the act does not destroy any property right of a plaintiff in his judgment but merely provides a method for ascertaining what payment he has received thereon and if he bought in the secured premises, unless he took steps under the act to have the fair value thereof fixed and any deficiency due him so ascertained, the effect is to consider the whole judgment paid and the judgment debtor is entitled to have the judgment satisfied. It seems to us elementary that no attachment execution can proceed when the original judgment debt upon which it was based has been paid in fact or considered paid by operation of law as under the Deficiency Judgments Act, so that the debt as provided in section 7 thereof, supra, is "released and discharged".

We know of no case in which a judgment creditor whose judgment has been paid or whose debt has been released and discharged sought nevertheless to proceed with an attachment execution issued on that very judgment, and the reason is that it is so elementary that he cannot do so. As to the nature of an attachment execution, it was stated in Reed v. Penrose's Executrix, 36 Pa. 214, at page 229, that it "is an equitable assignment of the thing attached; a substitution of the creditor for the debtor, to the latter's rights against the garnishee." Obviously, if after the attachment the attaching creditor ceases to be a creditor, the very foundation for his rights against the garnishee is removed and the effectiveness of the attachment is ended. In a very much later case, Collins v. O'Donnell et al., 325 Pa. 366, such an attachment is described as "in effect a suit by the judgment debtor to the use of the attaching creditor". So considered, as soon as the attaching creditor ceases to be one he ceases to be a party in interest and the proceeding to

his use through the attachment execution is at an end. Indeed to such an extent is garnishment considered as depending on the validity of the judgment on which it is based that in case a garnishee has been compelled to make payment of a judgment against him, if thereafter the primary judgment against the judgment debtor is reversed or set aside, the latter is entitled to restitution from the alleged judgment creditor: Restatement of the Law of Restitution 302, 303, §74, and illustrative case 31 (p. 317) citing Whitesell & Sons to use v. Peck et al., 176 Pa. 170. See also Carbo-Hydrogen Co. of America v. White, etc., 35 Dauph. 336.

The remaining contention of plaintiff is entirely without merit. On the rule for judgment against the garnishee, plaintiff claims that the judgment against the garnishee was entered by agreement and that this in some way constituted a new cause of action between the parties. We have already pointed out that attachment proceedings are in no sense a new cause of action. They are a form of execution on a primary judgment against the judgment debtor. When a defendant in execution or the garnishee agrees to the entry of a judgment against the garnishee on the attachment proceedings, it is no more than an agreement and a determination that the garnishee has so much property in his hands belonging to the judgment debtor. Plaintiff also argues that the "agreement" to the judgment against the garnishee amounted to a waiver of the benefits of the Deficiency Judgments Act. The answer to this contention is that, even if it could be construed to be a waiver of anything, the Deficiency Judgments Act of 1941, sec. 10, specifically forbids waiver of the provisions thereof and provides that any agreements so intended are "absolutely void, unenforceable and of no effect".

This case demonstrates the salutary effect of the Deficiency Judgments Act. Plaintiff, having defend-

ant's bond and mortgage for $3,000, bought the property in on foreclosure proceedings for $50. The last owners were enabled through advances made by the Home Owners' Loan Corporation to buy the property back. Plaintiff received a total consideration of more than the amount of the original mortgage. Nevertheless, under the law as it existed before the act, plaintiff might have been able to proceed against defendant on the judgment on his bond. Prior to the act, on the highly legalistic theory that though a mortgagee bought in a property at his foreclosure proceedings he became thereby a purchaser with the rights of any other purchaser, he had the right to pursue the obligor for any deficiency on the judgment regardless of the value of the security bought in. On the basis of this legalistic conception, it was stated that the result did not amount to an unjust enrichment of the judgment creditor, although in fact it was so. The Deficiency Judgments Act has put an end to that conception. The mortgagee purchaser must give credit on the judgment for the fair value of the security bought in by him, and if he fails to take steps to ascertain such value it follows that he has been fully paid, as clearly appears in this case because, whereas his mortgage was for only $3,000, the property was thereafter appraised at $3,910, on the basis of which the Home Owners' Loan Corporation refinanced it for the benefit of the last owners, who thereby secured a reconveyance to them of the property.

No meritorious ground was interposed by the plaintiff to defendant's petition to have the judgment against him satisfied, and the attachment proceedings thereon vacated and set aside. Accordingly, the rule to show cause thereon was properly made absolute.